COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





TOM RETZLAFF,

                            Appellant,

v.


GOAMERICA COMMUNICATIONS
CORPORATION, AARON DAVID
DUBRINSKI, JOHN AND/OR JANE
DOE,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-09-00115-CV

Appeal from the

County Court at Law Number Three 

of Bexar County, Texas 

(TC# 338432) 





O P I N I O N

            Tom Retzlaff appeals from orders dismissing a suit and declaring him a vexatious
litigant. We vacate in part, affirm in part, reverse in part, and remand.
            GoAmerica Communications Corporation provides telephone relay services to hearing-impaired and speech-impaired individuals.


 Retzlaff sued GoAmerica in propria persona,
alleging that it relayed a profane and threatening call to his telephone in the middle of the night. 
He sought damages for intentional infliction of emotional distress and negligence. In addition to
GoAmerica, Retzlaff named Aaron David Dubrinski and John and/or Jane Doe as defendants. 
Dubrinski filed a special appearance, identifying himself as the chairman and founder of
GoAmerica (and noting that the correct spelling of his name is “Dobrinsky”). The record does
not include a ruling on the special appearance. In his petition, Retzlaff described John and Jane
Doe as unidentified GoAmerica employees who placed the offending call. The record does not
demonstrate that these defendants were ever served.
            GoAmerica filed a motion to declare Retzlaff a vexatious litigant. The motion was
served on Retzlaff by fax on June 24, 2008. That evening, Retzlaff sent David Denton, one of
GoAmerica’s attorneys, an email, claiming that the fax was too big for his fax machine to handle
and that, as a result, he only received the first few pages of the motion. Retzlaff also stated that
he intended to sue Denton and his law firm in small claims court for damage to the fax machine. 
The email, which was replete with vulgar language and exclamation points, included the
following passage:
I am really, really pissed off at you, David. So pissed off that I just may come
down to your office to personally explain to you just how angry that I am! You
screwed up my fax machine even though I specifically told you not to be sending
me such large faxes.

            Two days later, at noon on June 26th, GoAmerica filed a motion for an expedited hearing
on the vexatious litigant motion. As the basis for this motion, GoAmerica relied on Retzlaff’s
email. GoAmerica characterized the email as “abusive and threatening,” and requested an
expedited hearing “because of the continuing threats of additional vexatious lawsuits and the
continuing threats to needlessly increase the cost of litigation.” The motion requested that the
hearing be set for the morning of June 27, 2008. In the alternative to an expedited hearing,
GoAmerica requested that the court “enter temporary orders” to prohibit Retzlaff from appearing
at Denton’s law firm’s offices and from filing any litigation in any court without first obtaining
permission of the local administrative judge. The motion was emailed to Retzlaff, and
GoAmerica requested permission to serve notice of the expedited hearing on Retzlaff by email.



            At 2:13 p.m. on June 26th, the court filed an order staying the case and prohibiting
Retzlaff from filing any motions or from filing any litigation in this state unless the local
administrative judge grants him permission. In addition, the order prohibits Retzlaff “from
appearing, contacting, communicating, or coming within 150 feet of any past or present officer,
director, employee, agent or attorney of GoAmercia, Inc.,” or from coming within 150 feet of
Denton, his law firm’s San Antonio offices, or 30 Rockefeller Plaza in New York.


 The order
does not provide a termination date for any of these prohibitions. The court also granted the
motion to expedite, allowed substituted service, and set a hearing for 10:30 the next morning--June 27, 2008.
            Retzlaff appeared on June 27th and announced not ready. He asserted that he had not
received the vexatious litigant motion and that he did not get notice of the hearing until 6:30 the
previous evening. He also objected to the June 26th order on the grounds that it was rendered ex
parte and without any statutory authority. Denton responded to Retlaff’s arguments about the
order by asserting that Retzlaff is an “ex-con” and, in the portion of the email quoted above,
made “a threat against me.”


 Denton stated that he had provided copies of the vexatious litigant
motion to Retzlaff by fax, email, and regular mail. Nevertheless, he handed another copy to
Retzlaff in open court and in the judge’s presence.
            The court allowed GoAmerica to present its argument and evidence on the vexatious
litigant motion. However, the court ordered that the hearing would reconvene at 2 p.m. on
June 30th (the Monday following June 27th) so Retzlaff could present his arguments and
evidence. At the June 30th hearing, Retzlaff presented argument and his own testimony.
            On August 22, 2008, the judge sent counsel and Retzlaff an order stating that she had
concluded that Retzlaff is a vexatious litigant and that he should be required to post security in
the amount of $12,500. On October 15, 2008, the court signed an order reflecting these rulings. 
The order required Retzlaff to furnish the security within seven days. The order also prohibited
Retzlaff “from filing, in propria persona, any new litigation in any state or federal court located
in the State of Texas without first obtaining permission of the local administrative judge after the
local administrative judge finds that the proposed litigation has merit and is not filed for the
purpose of harassment or delay.” On November 24, 2008, Retzlaff filed a motion to dismiss
without prejudice, noting that he had not furnished the required security. GoAmerica filed a
cross-motion to dismiss the case with prejudice as to all defendants. The court granted
GoAmerica’s motion and dismissed the entire suit with prejudice. Thereafter, the court entered
lengthy findings of fact and conclusions of law regarding the determination that Retzlaff is a
vexatious litigant, and then entered additional findings of fact and conclusions of law regarding
the dismissal of the suit. This appeal followed.
            In his second issue, Retzlaff asserts that the trial court conducted an ex parte, off-the-record hearing on June 26th without any notice to him. In considering this issue, it is important
to understand what is--and what is not--an ex parte communication:
An ex parte communication is one that concerns the matter, that is between a
lawyer representing a client and a judicial officer, and that occurs outside of the
presence and without the consent of other parties to the litigation or their
representatives. A written communication to a judicial officer with a copy sent
timely to opposing parties or their lawyers is not ex parte. The prohibition applies
to communication about the merits of the cause and to communications about a
procedural matter the resolution of which will provide the party making the
communication substantial tactical or strategic advantage. The prohibition does
not apply to routine and customary communications for the purpose of scheduling
a hearing or similar communications, but does apply to communications for the
purpose of having a matter assigned to a particular court or judge.

Restatement (Third) of The Law Governing Lawyers § 113 cmt. c (2000). 
            GoAmerica contends that Denton’s communication with the court was not ex parte
because Denton notified Retzlaff before submitting the motion to expedite. The record reflects
that Denton emailed Retzlaff the motion to expedite at 11:20 a.m. on June 26th. He stated, “I am
leaving for the Courthouse right now” to request that the motion to expedite be granted. Denton
also stated in the email that he had left a phone message for Retzlaff. No time for a hearing on
the motion to expedite was stated in the email or in the motion. Even now, there is nothing in the
record to indicate when the hearing was held, but it is clear that the court conducted some sort of
hearing at which it considered evidence and argument beyond what was included in the motion to
expedite. During the June 30th hearing, Retzlaff asked the court about the June 26th
proceedings:
The Court:All right. I am not a witness in this case. He brought an
email saying that he was in fear, and he didn’t want people
around him.
. . .
 
Retzlaff:Was there a court reporter present?
 
The Court:There may have been a court reporter present, but he --
 
Denton:I don’t believe -- I don’t believe that I requested a record,
Your Honor.
 
The Court:Yeah. All right?

Moreover, the court stated in its findings of fact that Denton “felt threatened and was visibly
shaken by the comments made in . . . Retzlaff’s email” and that Denton was “upset.” Nothing in
the motion to expedite or its attachments expressed Denton’s emotional state, so these factual
findings must have been based on some evidence presented to the court at the hearing. The
record does not reflect when the order granting the motion to expedite was signed, but it was
filed less than three hours after Denton emailed Retzlaff.
            It is “[a]n elementary and fundamental requirement of due process” that notice must be
“reasonably calculated, under all the circumstances, to apprise interested parties of the pendency
of the action and afford them an opportunity to present their objections.” Mullane v. Cent.
Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). “The
notice must be of such nature as reasonably to convey the required information and it must afford
a reasonable time for those interested to make their appearance.” Id.. [Internal citations omitted]. 
“[W]hen notice is a person’s due, process which is a mere gesture is not due process.” Id. at 315,
70 S.Ct. At 657. We conclude that the notice provided here was a mere gesture.
            GoAmerica also argues that the June 26th hearing was not ex parte because the motion to
expedite was not submitted to influence the trial court and because the merits of the vexatious
litigant motion were not considered. GoAmerica relies on Spigener v. Wallis, 80 S.W.3d 174
(Tex.App.--Waco 2002, no pet.). That case involved a hearing to approve a receiver’s proposed
sale at which the judge elected not to hear the merits of the receiver’s request and a hearing at
which the trial court merely set a final hearing on the receiver’s application for confirmation of
sale. See Spigener, 80 S.W.3d at 181-82. The appellate court held that these hearings were not
ex parte because they did not reach the merits of the suit. Id.
            This case would be similar to Spigener if all the court had done on June 26th was to set
the hearing on the vexatious litigant motion. See Restatement (Third) of The Law
Governing Lawyers § 113 cmt. c (“The prohibition [against ex parte communications] does
not apply to routine and customary communications for the purpose of scheduling a hearing or
similar communications . . . .”). But that is not all that the court did. Instead, it granted a portion
of the ultimate relief sought in GoAmerica’s vexatious litigant motion by enjoining Retzlaff from
filing any future litigation in Texas without obtaining the approval of the administrative judge. 
The court also enjoined Retzlaff from going to certain places. This injunctive relief affected
Retzlaff’s substantive rights.
            Finally, GoAmerica argues that even if the communication was ex parte, it was justified
by exigent circumstances. Specifically, GoAmerica asserts, “Plaintiff Retzlaff, an undisputed
convicted felon, created an extraordinary and exigent situation by threatening Defendants’
counsel.” GoAmerica relies on Barnes v. Whittington, 751 S.W.2d 493 (Tex. 1988).
            In Barnes, the Texas Supreme Court stated, “This court only allows [ex parte]
communications in limited, extraordinary emergency situations.” 751 S.W.2d at 495 n.1. As
examples of exigent situations, the court cited the Texas Rules of Civil Procedure governing
writs of attachment, garnishment, and sequestration. See Barnes, 751 S.W.2d at 495 n.1. 
Likewise, there are rules governing injunctive relief. See Tex.R.Civ.P. 680-693a. These rules
are specifically designed to allow emergency relief in exigent circumstances, while protecting the
due process rights of all parties. As detailed below in our discussion of Retzlaff’s fifth issue, the
rules were not followed in this case. GoAmerica offers no reason why the rules were not
followed. Without any showing as to why these rules were inadequate to protect GoAmerica or
Denton, we cannot condone the ex parte hearing that took place here.
            Retzlaff’s second issue is sustained.
            In his fifth issue, Retzlaff contends that the June 26th order violates his constitutional
rights, prevented him from contacting witnesses, and was not authorized by the vexatious litigant
statutes. The order contains three types of injunctions. First, it stayed this suit and prohibited
Retzlaff from filing any motions in the suit. This part of the order was of no consequence
because the litigation was statutorily stayed as soon as GoAmerica filed its vexatious litigant
motion. See Tex.Civ.Prac.&Rem.Code Ann. § 11.052(a)(West 2002).
            Second, the order prohibits Retzlaff “from appearing, contacting, communicating, or
coming within 150 feet of any past or present officer, director, employee, agent or attorney of
GoAmercia, Inc.,” or from coming within 150 feet of Denton, his law firm’s San Antonio offices,
or 30 Rockefeller Plaza in New York. GoAmerica contends that this part of the order was
necessitated by Retzlaff’s threatening email. It is, in effect, a restraining order. See Black’s
Law Dictionary 1428 (9th ed. 2009)(defining “restraining order” as “[a] court order prohibiting
or restricting violence . . . an order restricting a person from harassing, threatening, and
sometimes merely contacting or approaching another specified person.”).
            The Texas Rules of Civil Procedure set forth specific requirements for the granting of
injunctive relief, including ex parte restraining orders. “Texas Rules of Civil Procedure 680 and
684 require a trial court issuing a temporary restraining order to: (1) state why the order was
granted without notice if it is granted ex parte; (2) state the reasons for the issuance of the order
by defining the injury and describing why it is irreparable; (3) state the date the order expires and
set a hearing on a temporary injunction; and (4) set a bond.” In re Office of the Attorney Gen.,
257 S.W.3d 695, 697 (Tex. 2008)(orig. proceeding)(internal citations omitted). “Orders that fail
to fulfill these requirements are void.” Id. The trial court’s order does not meet these
requirements.
            Because the order is void and does not contain a termination date, we will vacate it. 
However, we reject Retzlaff’s suggestion that the prohibitions prevented him from rebutting
GoAmerica’s vexatious litigant motion. Although he points out that he had a right to contact
potential fact witnesses, including GoAmerica’s past employees, he does not attempt to explain
how he would have been able to prevail on the motion if he had been able to contact any of these
witnesses. Accordingly, we cannot conclude that the court’s error probably caused the rendition
of an improper judgment. See Tex.R.App.P. 44.1(a)(1).
            The third part of the order prohibited Retzlaff “from filing any litigations in any court
located in the State of Texas without first obtaining permission of the local administrative judge
after the local administrative judge finds that the proposed litigation has merit and has not been
filed for the purpose of harassment and delay.” This language is drawn from the vexatious
litigant statutes.
            Pursuant to these statutes, a defendant may move for an order determining that a plaintiff
is a vexatious litigant and requiring the plaintiff to furnish security. See Tex.Civ.Prac.&Rem.
Code Ann. § 11.051. Upon the filing of such a motion, the trial court “shall, after notice to all
parties, conduct a hearing to determine whether to grant the motion.” Id. § 11.053(a). The
statutes set forth specific criteria that must be established before a vexatious litigant motion can
be granted. See id. § 11.054. The defendant must show that there is no reasonable probability
that the plaintiff can prevail in the instant litigation. See id. The defendant must also show, by
one of several specified ways, that the plaintiff has a history of pursuing frivolous litigation. See
id. § 11.054(1), (2), (3). “[A]fter hearing the evidence on the motion,” the court must order the
plaintiff to furnish security for the defendant’s benefit if the court determines that the plaintiff is
a vexatious litigant. Id. § 11.055(a). In addition, “if the court finds, after notice and hearing”
that the plaintiff is a vexatious litigant, the court may prohibit the plaintiff from filing, in propria
persona, any new litigation in this state. Id. § 11.101(a). If the trial court orders this prohibition,
the plaintiff may still file a new suit, but only if a local administrative judge determines that the
suit has merit and has not been filed for purposes of harassment or delay. Id. § 11.102(a).
            It is apparent from reading these statutes that they attempt “to strike a balance between
Texans’ rights of access to their courts and the public interest in protecting defendants from those
who abuse the Texas court system by systematically filing lawsuits with little or no merit.” 
Sweed v. Nye, 319 S.W.3d 791, 793 (Tex.App.--El Paso 2010, pet. denied). The statutes are
carefully crafted to require notice, a hearing, and evidence to establish that the very specific
criteria in the statutes have been met. Nothing in the vexatious litigant statutes authorizes a trial
court to enjoin a plaintiff from filing litigation based merely on the fact that the plaintiff
threatened to sue the defendant’s counsel. But as we are about to explain, the court did
eventually conduct a valid hearing on GoAmerica’s vexatious litigant motion and it entered a
valid order, supported by evidence, granting the motion. Therefore, the portion of the June 26th
order prohibiting Retzlaff from filing litigation is moot.
            Retzlaff’s fifth issue is sustained in part and overruled in part.
            In his first issue, Retzlaff contends that he did not have proper notice of the June 27th
hearing. Generally, any motion to the court for an order and any notice of a hearing on a motion
must be served upon the other party at least three days before the hearing. Tex.R.Civ.P. 21. The
notice period is enlarged by three days when service is made by fax. Tex.R.Civ.P. 21a. The trial
court may, however, shorten the notice period. See Tex.R.Civ.P. 21. The court’s decision to
conduct a hearing before the notice period has expired will not be disturbed on appeal absent an
abuse of discretion. Buruato v. Mercy Hosp. of Laredo, 2 S.W.3d 385, 387 (Tex.App.--San
Antonio 1999, pet. denied). In exercising its discretion, the court may consider any exigent
circumstances presented in the case. Id. at 388.
            GoAmerica attempted to serve the vexatious litigant motion by fax on June 24th. 
Retzlaff admits that he received the first few pages of the motion at that time. This attempt at
service caused Retzlaff to threaten additional litigation for alleged damage to his fax machine. 
As a result of this threat, GoAmerica sought an expedited hearing. At approximately 6:30 p.m.
on June 26th, Retzlaff learned that the hearing on the motion would be at 10:30 the next
morning. He immediately started to “put a boilerplate response together” because, as he told the
trial court, “this isn’t the first time somebody’s tried one of these vexatious . . . litigant things on
me before.” If he did not receive a complete copy of the vexatious litigant motion before, he was
given a copy in open court on June 27th. The court allowed GoAmerica to present its motion on
June 27th, but the court did not require Retzlaff to come forward with his case. He mentioned
that he would need witnesses, and the court invited him to subpoena anyone he wanted to appear. 
After the proceedings ended at 12:41 p.m. on June 27th, Retzlaff had until 2 p.m. on June 30th to
prepare his arguments and obtain evidence. When the hearing reconvened on the 30th, Retzlaff
did not identify any witness he was unable to subpoena or any evidence he was unable to obtain. 
At the end of the hearing, the trial court gave the parties until July 29th to supply additional
briefing, specifically advising Retzlaff, “[Y]ou’re also entitled to brief me on any reason you
don’t feel you’re a vexatious litigant.”
            Considering all of these circumstances, we see no abuse of discretion. Although
Retzlaff’s threat of additional litigation did not justify a summary determination that he was
vexatious, it did justify an expedited hearing on the issue. The hearing began with short notice,
but the trial court recessed the hearing early on the first day and continued the proceedings so that
Retzlaff would have an opportunity to prepare his defense to the motion. The court even invited
Retzlaff to submit additional briefing after the hearing. Finally, there is nothing in the record to
suggest that the ultimate outcome of the hearing would have been any different if the hearing had
been delayed by a few days.
            Retzlaff’s first issue is overruled.
            In his third issue, Retzlaff argues that the trial court abused its discretion by declaring him
a vexatious litigant. A court may find a plaintiff to be a vexatious litigant if the defendant shows
that (1) there is not a reasonable probability that the plaintiff will prevail in the litigation against
the defendant, and (2) “the plaintiff, in the seven-year period immediately preceding the date the
defendant makes the [vexatious litigant] motion . . ., has commenced, prosecuted, or maintained
in propria persona at least five litigations other than in a small claims court that have been . . . 
finally determined adversely to the plaintiff.” Tex.Civ.Prac.&Rem.Code Ann. § 11.054(1)(A). 
We review the trial court’s determination that Retzlaff is a vexatious litigant for an abuse of
discretion. Sweed, 319 S.W.3d at 793.
            Regarding the first part of the vexatious litigant analysis, the trial court stated several
grounds to support its finding that Retzlaff did not have a reasonable probability of prevailing in
this suit. Retzlaff only attacks one of the stated grounds--that GoAmerica is immune from suit. 
An appellant must attack all independent grounds that support an adverse ruling. Fox v. Wardy,
224 S.W.3d 300, 304 (Tex.App.--El Paso 2005, pet. denied). Because Retzlaff has failed to
attack all of the independent grounds supporting the trial court’s determination that he did not
have a reasonable probability of prevailing on his claims, we must uphold the trial court’s ruling
on this issue. See id.
            Regarding the second part of the vexatious litigant analysis, the trial court listed twenty-six cases that Retzlaff commenced in propria persona within the preceding seven years. Some of
these cases were dismissed or nonsuited with prejudice. The court specifically found that nine of
the cases fit within the meaning of Section 11.054(1)(A). Retzlaff asserts that there is no proof
that these suits were filed by him or that they were filed in propria persona. He also asserts that
some of the cases were nonsuits that resulted from settlements. He argues that the trial court
erred in concluding that cases that were dismissed or nonsuited with prejudice were “determined
adversely” to him within the meaning of Section 11.054(1)(A). Retzlaff further argues that
appeals should not be included.
            GoAmerica submitted certified copies of docket sheets relating to five appellate
proceedings. The trial court included these five cases in its list of cases that qualify under the
statute. Because only five cases are required, we will confine our review to these cases and will
examine the docket sheets to determine whether the trial court abused its discretion in concluding
that these cases qualify under the statute.
            Four of the docket sheets relate to appeals commenced in Texas appellate courts by
Retzlaff, in propria persona, within the seven years immediately preceding the date that the
vexatious litigant motion was filed. Retzlaff argues that appeals should not count because
litigation is commenced in a trial court, not an appellate court. Retzlaff ignores the broad
language used in the vexatious litigant statutes.
            A litigant is vexatious if, in the applicable seven-year period, he “has commenced,
prosecuted, or maintained in propria persona at least five litigations other than in a small claims
court that have been . . . finally determined adversely to” him. Tex.Civ.Prac.&Rem.Code Ann. 
§ 11.054(1)(A). “Litigation” is “a civil action commenced, maintained, or pending in any state
or federal court.” Id. § 11.001(2). The language of these statutes plainly encompasses appeals. 
The statutes include “any state or federal court,” excepting only small claims courts. Although
“civil action” is not defined in the statutes, “action” is generally defined in law as a “civil or
criminal judicial proceeding.” Black’s Law Dictionary 329 (9th ed. 2009). Thus, a person
who files a notice of appeal is maintaining litigation. The primary meaning of “maintain” is “[t]o
continue (something).” Id. at 1039. We also note that California’s vexatious litigant statutes are
virtually identical to ours. See Cal.Civ.Proc.Code § 391(a), (b)(1). Those statutes have been
held to apply to appeals, at least when the appellant was the plaintiff in the trial court. See In re
R.H., 88 Cal.Rptr.3rd 650, 661-63 (Cal.Ct.App. 2009); McColm v. Westwood Park Ass’n, 73
Cal.Rptr.2d 288, 292-93 (Cal.Ct.App. 1998). But see Mahdavi v. Superior Court, 82
Cal.Rptr.3rd 121, 126 (Cal.Ct.App. 2008)(“A defendant who appeals an adverse ruling is not
filing ‘new’ litigation or ‘maintaining’ litigation, but rather, is attempting to ‘undo’ the results of
litigation that has been instituted against him or her.”).
            Retzlaff expresses concern that if appeals are included, one case could be counted more
than once--first when it is filed in the trial court, again when an appeal is filed, and yet again
when discretionary review is sought. We are counting only the appeals, not the underlying trial
court cases. Because no double-counting is occurring here, we express no opinion regarding this
concern.
            Since appeals count and the docket sheets show that Retzlaff filed four appeals in propria
persona within the applicable time frame, the only remaining issue is whether the appeals were
“determined adversely” to Retzlaff.
            Two of the docket sheets reflect that the trial court judgments were affirmed, meaning
that Retzlaff, as the appellant, lost on the merits of his appeals. See Retzlaff v. Tex. Dep’t of
Criminal Justice, 135 S.W.3d 731 (Tex.App.--Houston [1st Dist.] 2003, no pet.); Retzlaff v.
Courteau, No. 03-01-00647-CV, 2002 WL 31386042 (Tex.App.--Austin Oct. 24, 2002, pet.
denied)(not designated for publication). The trial court did not abuse its discretion in
determining that these appeals were determined adversely to Retzlaff.
            The next two docket sheets are for appeals that were dismissed. See Retzlaff v. Tex. Dep’t
of Criminal Justice, 01-04-00409-CV, 2004 WL 2823168 (Tex.App.--Houston [1st Dist.] Dec. 9,
2004, no pet.)(mem. op.)(dismissing due to Retzlaff’s failure to pay the filing fee); Retzlaff v.
Owusu, No. 01-03-001301-CV, 2004 WL 1795146 (Tex.App.--Houston [1st Dist.] Aug. 12,
2004, no pet.)(mem. op.)(dismissing due to Retzlaff’s failure to file a brief). A California
appellate court has rejected the argument that dismissals should not be counted for purposes of a
vexatious litigant statute because the argument runs contrary to the underlying intent of the
legislation. See Tokerud v. CapitolBank Sacramento, 45 Cal.Rptr.2d 345, 347 (Cal.Ct.App.
1995). The court stated:
An action which is ultimately dismissed by the plaintiff, with or without
prejudice, is nevertheless a burden on the target of the litigation and the judicial
system, albeit less of a burden than if the matter had proceeded to trial. A party
who repeatedly files baseless actions only to dismiss them is no less vexatious
than the party who follows the actions through to completion. The difference is
one of degree, not kind.

Id. However, the court suggested that a dismissal should not count if it was part of a negotiated
settlement. See id. Nothing on the docket sheets indicates that these dismissals were part of
negotiated settlements. Although Retzlaff filed an affidavit in the trial court indicating that the
Owusu case was voluntarily nonsuited after payment of an adequate settlement, the trial court
could have rejected this averment based on the docket sheet, which shows an involuntary
dismissal.
            The final docket sheet is for an original proceeding commenced by Retzlaff in propria
persona during the applicable time frame. After a response and a reply were filed, the appellate
court denied mandamus relief to Retzlaff. Under the definitions given above, a person who seeks
mandamus relief commences a civil action in the appellate court. Although the mandamus
proceeding arose from the same underlying case as the appeal in Owusu, it was a separate,
original proceeding that did not challenge the trial court’s final decision in the underlying case or
relate to the merits of the underlying case. See In re Retzlaff, 01-03-00770-CV, 2003 WL
22108920, at *1 (Tex.App.--Houston [1st Dist.] Sept. 4, 2003, orig. proceeding)(mem.
op.)(denying mandamus relief for trial judge’s purported failure to rule on motions). Therefore,
we think it is proper to count it as Retzlaff’s fifth adverse determination.
            Retzlaff’s third issue is overruled.
            In his fourth issue, Retzlaff argues that the trial court erred in dismissing the case because
he failed to post security. Although the order requiring him to post security was signed on
October 15, 2008, he claims that he did not receive a copy of it until November 18, 2008. Since
the order required him to post the security within seven days, Retzlaff contends that he did not
receive the order in time to comply with it.
            Under the doctrine of invited error, a party may not “ask something of the trial court and
then complain that the court erred in granting the relief sought.” Berry v. Segall, 315 S.W.3d
141, 143-44 (Tex.App.--El Paso 2010, no pet.). On November 24, 2008, Retzlaff filed a motion
in which he noted that he had not posted the security required by the October 15th order and 
“ask[ed] the court to sign an order dismissing this case pursuant to Texas Civil Practice &
Remedies Code section 11.056.” The referenced statute requires a trial court to dismiss if the
plaintiff fails to post security after being ordered to do so. See Tex.Civ.Prac.&Rem.Code Ann.
§ 11.056. Thus, Retzlaff asked the court for the very thing that he complains about now--a
dismissal for failure to post security.
            Moreover, “[a]s a prerequisite to presenting a complaint for appellate review, the record
must show that . . . the complaint was made to the trial court by a timely request, objection, or
motion . . . .” Tex.R.App.P. 33.1(a)(1)[Emphasis added]. Although Retzlaff objected to the lack
of notice in his motion for new trial, he did not mention it any time between November 18, 2008
(which is when he claims to have received the order) and December 12, 2008 (which is when the
case was dismissed). Therefore, he failed to make a timely objection. See Low v. Henry, 221
S.W.3d 609, 618 (Tex. 2007); Landerman v. State Bar of Texas, 247 S.W.3d 426, 433
(Tex.App.--Dallas 2008, pet. denied).
            Retzlaff’s fourth issue is overruled.
            In his seventh issue, Retzlaff argues that the trial court erred in dismissing the case with
prejudice as to all of the defendants. Within this issue, he first argues that the vexatious litigant
statutes do not authorize a dismissal with prejudice. Actually, the applicable statute does not
specify whether dismissals should be with or without prejudice. It simply states, “The court shall
dismiss a litigation as to a moving defendant if a plaintiff ordered to furnish security does not
furnish the security within the time set by the order.” Tex.Civ.Prac.&Rem.Code Ann.
§ 11.056. Texas appellate courts have affirmed dismissals with prejudice pursuant to this statute. 
See, e.g., Drum v. Calhoun, 299 S.W.3d 360, 374 (Tex.App.--Dallas 2009, pet. denied), cert.
denied, 131 S.Ct. 1017, 178 L.Ed.2d 843 (2011); Nell Nations Forist v. Vanguard Underwriters
Ins. Co., 141 S.W.3d 668, 670-71 (Tex.App.--San Antonio 2004, no pet.). However, the
opinions in these cases do not indicate that the appellants argued that the dismissals should have
been without prejudice.
            Retzlaff offers no reasoning as to why the dismissal should have been without prejudice. 
See Tex.R.App.P. 38.1(i). Accordingly, without deciding whether it may ever be error to dismiss
a case under the statute with prejudice, we see no error in this case.
            Retzlaff further argues that the trial court erred in dismissing the suit as against Dubrinski
(Dobrinksy) and John and/or Jane Doe. As noted above, the statute required the court to dismiss
“as to a moving defendant.” Tex.Civ.Prac.&Rem.Code Ann. § 11.056. “‘Moving defendant’
means a defendant who moves for an order under Section 11.051 determining that a plaintiff is a
vexatious litigant and requesting security.” Id. § 11.001(4). GoAmerica is the only defendant
that entered a general appearance in this case, and it is the only defendant that made a motion
under Section 11.051. When Retzlaff failed to post security, it filed a motion to dismiss the case
with prejudice. Within the body of this motion, GoAmerica sought dismissal “as to all
Defendants,” but it provided no argument to demonstrate that it had standing to obtain a
dismissal for the other defendants. The statutes are very clear. Because the other defendants did
not make a motion under Section 11.051, they are not entitled to a dismissal with prejudice.
            Retzlaff’s seventh issue is overruled to the extent that it attacks the dismissal with
prejudice as to GoAmerica, but sustained as to the other defendants.
            In his sixth issue, Retzlaff challenges the constitutionality of the vexatious litigant
statutes on a number of grounds. He asserts that his challenges arise under the Texas
Constitution, as well as the United States Constitution. When a provision of the Texas
Constitution has an analogue in the United States Constitution, we generally construe the
provisions the same in the absence of a showing as to why the Texas provision should be
construed more broadly. See Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 98
(Tex. 2004). With one exception, Retzlaff does not suggest that the Texas provisions are broader
than their federal analogues. Retzlaff also raises one ground that is unique to the Texas
Constitution. Therefore, with these exceptions, we assume that the federal and state constitutions
provide the same protections.
            When we are confronted with a challenge to the constitutionality of a statute, we presume
that the statute is valid and that the legislature did not act unreasonably or arbitrarily. In re
D.J.R., 319 S.W.3d 759, 764-65 (Tex.App.--El Paso 2010, pet. denied). The person challenging
the legislation bears the burden to establish its unconstitutionality. Id. at 765. In a facial
challenge to a statute, the challenger must establish that no set of circumstances exists under
which the statute will be valid. Id. at 764. Since a statute may be valid as applied to one set of
facts and invalid as applied to another, the challenger must first show that the statute is
unconstitutional as applied to him; that the statute may be unconstitutional as applied to others is
insufficient to support a facial challenge. Id. A claim that a statute is unconstitutional as applied
is a claim that the statute, although generally constitutional, operates unconstitutionally as to the
challenger. Id. at 765. An as-applied challenger must only demonstrate that the statute operates
unconstitutionally when applied to his particular circumstances. Id.
            One final consideration guides us through Retzlaff’s challenges to the vexatious litigant
statutes: There is no constitutional right to file frivolous litigation. Wolfe v. George, 486 F.3d
1120, 1125 (9th Cir. 2007).
            Retzlaff argues that Section 11.054 is void for vagueness because it provides no guidance
as to the meaning of “reasonable probability that the plaintiff will prevail” or as to who has the
burden on this issue. There is no requirement that a statute define all words or terms used. 
Rooms With a View, Inc. v. Private Nat’l Mortg. Ass’n Inc., 7 S.W.3d 840, 845 (Tex.App.--Austin 1999, pet. denied). “Courts recognize the myriad of factual situations that may arise and
allow statutes to be worded with flexibility,” as long as they provide fair notice. Id. “In the case
of civil or regulatory statutes, no more than a reasonable degree of certainty is required.” Id.
            The statute provides that a court may find a plaintiff to be a vexatious litigant “if the
defendant shows that there is not a reasonable probability that the plaintiff will prevail.” 
Tex.Civ.Prac.&Rem.Code Ann. § 11.054. This language clearly places the burden on the
defendant. Furthermore, the term “reasonable probability” is certain enough to provide fair
notice. See Wolfe, 486 F.3d at 1124 (rejecting general vagueness challenge to the California
vexatious litigant statute, which also uses the “reasonable probability” standard); Taliaferro v.
Hoogs, 46 Cal.Rptr. 147, 152 (Cal.Ct.App. 1965)(rejecting argument that “reasonable
probability” standard was fatally uncertain); see also Leonard v. Abbott, 171 S.W.3d 451, 456-57
(Tex.App.--Austin 2005, pet. denied)(rejecting argument that “reasonable probability” was void
for vagueness as applied to the appellant). Retzlaff has not demonstrated that the term operated
unconstitutionally as applied to his claims.
            Retzlaff next challenges the security requirement as a denial of “access to the courts,” due
process, and equal protection because the statutes provide no guidance as to the amount of
security and make no allowance for indigent plaintiffs. Retzlaff is simply wrong in asserting that
no guidance as to the amount is provided. The legislation states that the security is to assure
payment of the moving defendant’s reasonable expenses, including attorney’s fees. Tex.Civ.
Prac.&Rem.Code Ann. § 11.055(c).



            On the facts before us, we agree with those courts that have upheld a similar security
requirement under rational basis review. See Wolfe, 486 F.3d at 1126; Moran v. Murtaugh Miller
Meyer & Nelson, LLP, 152 P.3d 416, 419 (Cal. 2007). In this case, the security requirement did
not prevent the vindication of a fundamental right, such as a right related to marriage. See Wolfe,
486 F.3d at 1125-26. Moreover, although Retzlaff points out that he filed an uncontested
affidavit of indigency at the outset of the case, he ignores the fact that there was a contest to the
affidavit of indigency that he filed at the end of the case in order to obtain a free appellate record. 
The court sustained this contest, finding Retzlaff’s testimony not credible. Accordingly, the
security requirement does not violate due process or equal protection as applied to Retzlaff.
            Retzlaff does not explain what he means by the term “access to the courts.” However, the
term is typically used to describe the right of prisoners to attack their sentences or the conditions
of their confinement. See, e.g., Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135
L.Ed.2d 606 (1996). Retzlaff cites one of the seminal Supreme Court case recognizing this right. 
See Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Because
Retzlaff is not an inmate and is not attempting to attack a prison sentence or conditions of
confinement, he cannot establish that the security requirement violates his right of access to the
courts. See Lewis, 518 U.S. at 350-51, 97 S.Ct. at 2179-80.
            Retzlaff further argues that the vexatious litigant statutes violate the right of access to the
courts, due process, and equal protection because they bar all lawsuits, not just frivolous ones. 
We disagree with this interpretation of the legislation. An administrative judge may grant
permission for a vexatious litigant to file litigation if the litigation has merit and is not being
brought for harassment. See Tex.Civ.Prac.&Rem.Code Ann. § 11.102(a). And, contrary to
Retzlaff’s understanding, a vexatious litigant may seek review of the administrative judge’s
decision. See In re Johnson, No. 07-09-0035-CV, 2009 WL 2632800, at *1-2 (Tex.App.--Amarillo Aug. 27, 2009, orig. proceeding)(mem. op.)(providing mandamus review of 
administrative judge’s denial of permission); see also Tex.Civ.Prac.&Rem.Code Ann.
§ 11.102(c)(effective Jan. 1, 2012)(expressly authorizing mandamus review of administrative
judge’s denial). Thus, while the legislation places an additional hurdle before vexatious litigants,
it does not prevent them from pursuing meritorious litigation.
            Retzlaff next argues that his right to self-representation is violated by the prohibition on
filing future lawsuits in propria persona. We disagree because this restriction is rationally related
to the legislature’s goal of curbing frivolous litigation. See Wolfe, 486 F.3d at 1126 (“Frequent
pro se litigants are not a suspect class meriting strict scrutiny.”). As another court has stated,
“Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers
of the court, are subject to disbarment, suspension, and other disciplinary sanctions not
applicable to litigants in propria persona.” Taliaferro, 46 Cal.Rptr. at 151; see also Leonard, 171
S.W.3d at 458 (rejecting argument that banning future in propria persona suits violates equal
protection).
            Retzlaff contends that the legislation denies his right to freedom of expression pursuant to
the First Amendment to the United States Constitution and Article I, section 8, of the Texas
Constitution. In particular, he argues that the requirement of obtaining permission to file future
law suits is an invalid prior restraint. See Davenport v. Garcia, 834 S.W.2d 4, 10 (Tex.
1992)(holding that a prior restraint is presumptively unconstitutional under the Texas
Constitution).
            “Just as false statements are not immunized by the First Amendment right to freedom of
speech, baseless litigation is not immunized by the First Amendment right to petition.” Bill
Johnson’s Rests., Inc. v. N.L.R.B., 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277
(1983)[Internal citations omitted]. Therefore, “contentions that one’s freedom of speech is
violated are to no avail against injunctions to prevent vexatious litigation.” Owens-Corning
Fiberglas Corp. v. Baker, 838 S.W.2d 838, 842-43 (Tex.App.--Texarkana 1992, no writ). 
Because Retzlaff has no right to file frivolous suits, he has not demonstrated that requiring him to
obtain permission infringes any constitutionally protected form of expression. See Bill Johnson’s
Rests., 461 U.S. at 744, 103 S.Ct at 2170 (upholding NLRB’s power to enjoin baseless lawsuits);
Wolfgram v. Wells Fargo Bank, 61 Cal.Rptr.2d 694, 705 (Cal.Ct.App. 1997)(rejecting challenge
to comparable California statute as a prior restraint).
            Last, Retzlaff argues that the legislation’s ban on lawsuits constitutes outlawry, which is
prohibited by the Texas Constitution. See Tex.Const. art. I, § 20. This prohibition forbids the
government from denying a citizen all legal rights or transporting a citizen out of the state as
punishment for an offense. Peeler v. Hughes & Luce, 909 S.W.2d 494, 499 (Tex. 1995). 
Because Retzlaff has not been denied all legal rights or banished from the state, the “outlawry”
provision is not implicated. See id. Accordingly, the “outlawry” provision of the Texas
Constitution is not implicated.
            Retzlaff’s sixth issue is overruled.
            In conclusion, the trial court’s order of June 26, 2008, which contained various injunctive
provisions, is vacated in toto. The court’s judgment dismissing this case with prejudice is
reversed in part, as it pertains to any defendants other than GoAmerica. In all other respects, the
judgment is affirmed. The cause is remanded for further proceedings consistent with this
opinion. Nothing stated herein should be construed to cast doubt on the trial court’s conclusion
that Retzlaff is a vexatious litigant or on the court’s prohibition against Retzlaff’s filing any new
litigation in this state. The cause is remanded solely for the purpose of disposing of the
remaining defendants.

October 7, 2011
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.